**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ENLAI ZHU, | **CIVIL ACTION NO:** |
| *Plaintiff*, | |
| v. | **1:25-cv-06534-WMR** |
| ANKASHA *et al*., | |
| *Defendants*. | |

**[proposed] ORDER ON MOTION FOR ENTRY OF**
**DEFAULT JUDGMENT AS TO ALL DEFULATING DEFENDANTS**

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Entry of Default Judgment as to all Defendants, [ECF No. 13] (the "Motion"), filed on June 22, 2026. Plaintiff now moves for an entry of default and/or entry of final judgment against all Defendants (collectively "Defaulting Defendants"), attached hereto.

Defendants failed to appear, answer, or otherwise plead to the Complaint, [ECF No. 1], despite having been served. The Court has carefully considered the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the following reasons, Plaintiff's Motion is **GRANTED**.

1

## INTRODUCTION

Plaintiff filed its Complaint against Defendants for infringement on the Plaintiff's trademark on November 14, 2025. [ECF No. 1]. The Complaint alleges that Defendants created numerous e-commerce stores that are advertising, offering for sale, and selling infringing and counterfeit Plaintiff's registered trademark products to unknowing consumers. *Id.* ¶ 2.

The time allowed for Defaulting Defendants to respond to the Complaint has expired. [ECF No. 11]. Defaulting Defendants have not been granted any extension of time to respond, nor have they filed Answer or other responsive pleadings. *See* Decl. of Palmer, ¶ 6.

In Plaintiff's Motion, Plaintiff has stated that the prerequisites for a default judgment have been met. The Defaulting Defendants in this case have neither appeared nor responded and are therefore in default. Given the absence of any Defendants to contest or produce inconsistent liability outcomes, the Court finds that there is ample justification in the pleadings to grant a default judgment against the Defaulting Defendants.

## LEGAL STANDARDS

"When a party against whom a judgment or affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Once the

clerk enters a default, Rule 55(b)(2) allows the court to enter a default judgment. FED. R. CIV. P. 55(b)(2). "[I]t is well established that a 'district court has the authority to enter default judgment for failure ... to comply with its orders or rules of procedure.'" *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp. 2d 1287, 1290 (S. D. Ala. 2010) (quoting *Wahl v. McIver,* 773 F.2d 1169, 1174 (11th Cir. 1985)). By its default, a party "admits the [opponent's] well-pleaded allegations of fact." *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The court "must consider whether the unchallenged facts constitute a legitimate cause of action." *Joe Hand Promotions, Inc. v. ADJ Entity, LLC*, 2011 WL 4102314, at *2 (M.D. Ga. Sept. 14, 2011). The court may grant default judgment on claims that are legally sufficient and supported by well-pleaded allegations. *See McCoy v. Johnson,* 176 F.R.D. 676,679 (N.D. Ga. 1997).

Further, if there are multiple defendants, the plaintiff must state in the motion for default final judgment that there are no allegations of joint and several liability, and set forth the basis why there is no possibility of inconsistent liability. Generally, if one defendant who is alleged to be jointly and severally liable with other defendants' defaults, judgment should not be entered against that defendant until the matter is adjudicated against the remaining defendants. *See* 10A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2690 (3d ed. 1998) (citing *Frow v. De La Vega*, 82 U.S. 552, 554 (1872) ("[A] final decree on the merits

against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal.")). "Even when defendants are similarly situated, but not jointly liable, judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits." *Gulf Coast Fans, Inc. v. Midwest Elecs. Imp., Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984).

## FACTUAL BACKGROUND

Plaintiff is the owner of all rights, title and interest in the SHANGGUAN trademark, U.S. Trademark Registration No. 7,465,986. *See* [ECF No. 1-1]. The registration is valid, subsisting, unrevoked, unchallenged and uncancelled. [ECF No. 1, ¶ 9]. The registration for the SHANGGUAN trademark constitutes *prima facie* evidence of validity and of Plaintiff's exclusive right to use the SHANGGUAN trademark pursuant to 15 U.S.C. §1057(b). *Id.*

As alleged by Plaintiff, established by the evidence presented herein and admitted by default, Defaulting Defendants own, operate, or control the online storefronts and seller accounts used to advertise, offer for sale, and sell products bearing unauthorized reproductions, counterfeits, copies, or colorable imitations of Plaintiff's trademark. Thus, Defaulting Defendants are the active, conscious, and dominant forces behind promotion, advertisement, distribution, offering for sale, and/or sale of goods bearing and/or using the Plaintiff's registered mark. *See* [ECF No. 1, ¶¶ 21-22].

Further, as admitted by Defaulting Defendants through default, at all times relevant, Defaulting Defendants have had knowledge of Plaintiff's ownership of the mark, including its exclusive right to use and license the mark and the goodwill associated with the trademark. *See* [ECF No. 1, ¶¶ 21-22].

Defaulting Defendants have never been authorized to use the mark, and none of the Defaulting Defendants are authorized retailers of genuine products. Nonetheless, Defaulting Defendants have sold, offered to sell, marketed, distributed, and advertised products using the trademark without Plaintiff's permission through internet stores operating under their Seller Aliases. *See* Compl. [ECF No. 1, ¶¶ 15, 16].

Plaintiff reviewed and examined Defaulting Defendants' e-commerce storefronts and captured screenshots of webpages displaying products bearing the Plaintiff's registered mark offered under the Seller Aliases. *See* Infringing Evidence, [ECF Nos. 5-3, 5-4, and 5-5]. The Infringing Evidence establishes that Defaulting Defendants are engaged in the unauthorized promotion, advertisement, distribution, offering for sale, and sale of goods that bear or use counterfeits or infringements of the Plaintiff's registered mark. *See Id*.

# ANALYSIS

## A. Defaulting Defendants Infringed Plaintiff's Registered Trademark

The Lanham Act prohibits any person, who, without the consent of the registrant, uses in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods on which such use is likely to cause confusion. 15 U.S.C. ¶1114(1). Anyone who violates the Act is liable to the registrant for the remedies the Act sets forth. *Id*.

To prevail on a claim of trademark infringement claim under Section 32 of the Lanham Act, a plaintiff must establish that: (1) the plaintiff had prior rights to the trademarks at issue, and (2) the defendants adopted a mark or name that was the same, or confusingly similar to Plaintiff's mark, such that consumers were likely to confuse the two. *Planetary Motion, Inc. v. Techsplosion, Inc*., 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc*., 106 F.3d 355, 360 (11th Cir. 1997)).

To prevail on a claim of false designation of origin under Section 43(a) of the Lanham Act requires that a plaintiff demonstrate that a defendant used the trademark "in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, which is likely to deceive as to the affiliation, connection, or association" of the defendant with the

plaintiff, or as to the origin, sponsorship, or approval, of defendant's goods by plaintiff. 15 U.S.C. § 1125(a)(1). As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) is "whether the public is likely to be deceived or confused by the similarity of the marks at issue." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S. Ct. 2753, 2763 (1992).

Ownership of a federal trademark registration is *prima facie* evidence of the validity of the registered mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark. 15 U.S.C. 1115(a).

The Court finds that the factual allegations in the Complaint, [ECF No. 1, ¶¶ 8-22], together with the infringing evidence, [ECF Nos. 5-3, 5-4, and 5-5], establish each element of Plaintiff's claims for trademark infringement under 15 U.S.C. § 1114 and false designation of origin under 15 U.S.C. § 1125(a). Those allegations are deemed admitted by virtue of Defaulting Defendants' default. Accordingly, Defaulting Defendants are liable to Plaintiff on Counts I and II of the Complaint, and entry of final default judgment is warranted under Fed. R. Civ. P. 55(b).

### B. Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. 15 U.S.C. § 1116(a). Defendants' failure to respond or otherwise appear in this action makes it difficult

for Plaintiff to prevent further infringement absent an injunction. *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.").

Permanent injunctive relief is appropriate where a plaintiff demonstrates: "(1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest." *Angel Flight of Georgia, Inc. v. Angel Flight of America, Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Irreparable harm exists where, as here, the infringers' unauthorized use of Plaintiff's intellectual property causes confusion among consumers and damages the business's reputation and brand confidence. *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage [the plaintiff] business reputation and decrease its legitimate sales.").

***First***, the irreparable harm to Plaintiff is evident. As long as Defaulting Defendants continue to operate under the Seller Aliases, Plaintiff lacks an adequate legal remedy. The unauthorized use of the SHANGGUAN trademark compromises Plaintiff's ability to control product quality, customer service, and the overall

goodwill associated with the brand. Monetary damages alone are insufficient to rectify the damage to Plaintiff's reputation and goodwill that will persist if Defaulting Defendants' infringing activities continue.

**Second**, the balance of hardships decidedly favors the issuance of an injunction. Plaintiff endures significant hardship from lost sales and a diminished ability to maintain its reputation in the marketplace. In contrast, Defaulting Defendants would not suffer any legitimate hardship from being enjoined from distributing counterfeit products, as these actions constitute illegal activity.

**Lastly,** the issuance of a permanent injunction in this case is within the public's interest where a permanent injunction will prevent further harm to Plaintiff and the goodwill of the SHANGGUAN trademark and protect consumers from being deceived or misled by Defaulting Defendants' unauthorized use of the SHANGGUAN trademark. *See Nike, Inc. v. Leslie*, No. 85-cv-960, 1985 WL 5251, at *1 (M.D. Fla., June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . (t)he essence of equity jurisdiction has been the power of the Chancellor to do equity

9

and to mold each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Defaulting Defendants have created an Internet-based scheme that profits from the deliberate misappropriation of Plaintiff's rights. Without permanent removal of the infringing listings and images, Defaulting Defendants will continue to violate Plaintiff's rights and deceive the public unabatedly. Consequently, it is essential that the Court issues a permanent injunction mandating the removal of all product listings and images that display SHANGGUAN trademark from the internet stores operated by Defaulting Defendants on the applicable online marketplace platforms. This action is crucial to prevent further infringement and protect the public from fraudulent activities.

**C. Statutory Damages for Trademark Infringement**

In a case involving use of a counterfeit mark, the Lanham Act provides that a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1) (emphasis added). In cases where the court finds that the use of the counterfeit mark was willful, the maximum available statutory damages increase to

"not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

"Generally, statutory damages are awarded when no actual damages are proven, or actual damages and profits are difficult or impossible to calculate." *Cable/Home Comm. Corp. v. Network Prods., Inc.,* 902 F.2d 829, 850 (11th Cir. 1990). The court has wide discretion in determining an award of statutory damages. *Id*. at 853. Two factors that warrant special consideration are the willfulness of a defendant's conduct and the deterrent value of any sanction imposed. *Id*. at 852.

Additionally, Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See, e.g., Volkswagen Grp. of Am., Inc. v. Varona*, No. 19-24838-CIV, 2021 U.S. Dist. LEXIS 93697, at *30-31 (S.D. Fla. May 18, 2021); *Tommy Hilfiger Licensing, Inc. v. Goody's Fam. Clothing, Inc.,* No. 100-CV-1934-BBM, 2003 U.S. Dist. LEXIS 8788, at *73 (N.D. Ga. May 9, 2003). Other relevant factors courts have considered when awarding statutory damages for copyright infringement under 17 U.S.C. § 504(c) include the value of the work; the deterrent effect of others besides the defendant; whether a defendant cooperated in providing particular records from which to assess the value of the infringing material produced; and the potential for discouraging the defendant. *See Volkswagen Grp. of Am., Inc*., 2021 U.S. Dist. LEXIS 93697, at *9. This Court also finds "that the point of sale is very

relevant to the statutory damages discussion." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 584 (E.D. Pa. 2002); *see also Volkswagen Grp. of Am., Inc.*, 2021 U.S. Dist. LEXIS 93697, at *29-30; H-D U.S.A., *LLC v. Guangzhou Tomas Crafts Co., et al.*, No. 16-cv-10096, 2017 U.S. Dist. LEXIS 207613, at *13-14 (N.D. Ill. Dec. 18, 2017) ("the fact that defendant's counterfeiting took place online favors a higher statutory damages award because online counterfeiting can reach a much wider audience than counterfeiting through a physical store.").

"If this Court were to award only nominal damages, Defendants, and others similarly situated, could merely factor this cost into their ongoing and future infringing activities." *See Volkswagen Grp. of Am., Inc.*, 2021 U.S. Dist. LEXIS 93697, at *32. While this Court may look to the size and scope of a defendant's operations, "there is no necessary mathematical relationship between the size of a statutory damages award and the extent or profitability of the defendant's wrongful activities." *Luxottica USA LLC v. The P'ships, et al.*, No. 14-cv-09061, 2015 U.S. Dist. LEXIS 78961, at *6 (N.D. Ill. June 18, 2015); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 127 (2d Cir. 2014) (a "direct correlation between statutory damages and actual damages" is not needed). Here, "given the scope of the internet supermarket" the scope here is presumptively high. *Veit*, 211 F. Supp. 2d at 584.

Plaintiff requests that the Court award fifty thousand dollars ($15,000) in statutory damages against each of the Defaulting Defendants for willful infringement

of the SHANGGUAN trademark in connection with the sale of Compressed Towels. The Court finds that these damages take into account Defaulting Defendants' willfulness, which is established by virtue of their default, the potential revenues lost by Plaintiff due to the infringing conduct, the potential scope of an e-commerce-based counterfeiting business, and the need to deter Defaulting Defendants and similarly situated e-commerce sellers from future infringing conduct. *See, e.g., Entertainment One UK Ltd. v. 2012Shiliang,* 384 F. Supp. 3d 941 (N.D. Ill. 2019) (awarding $15,000 per defendant for the sale of counterfeit Peppa Pig cookie cutters on plaintiff's motion for summary judgment); *All-Star Marketing Group, LLC v. Media Brands Co., Ltd.*, 775 F. Supp. 7 2d 613, 626 (S.D.N.Y. 2011) (awarding $25,000-$15,000 per mark, for a total of $300,000 per defendant, related to the sale of counterfeit consumer products, including "The Snuggie," on plaintiff's motion for default judgment); *Streamlight, Inc. v. Gindi,* 18-CV-987 (NG), 2019 WL 6733022, at *15 (E.D.N.Y. October 1, 2019), *report and recommendation adopted*, 2019 WL 6726152 (E.D.N.Y. December 11, 2019) (awarding $1 million in statutory damages related to the sale of flashlights using seven counterfeit marks on plaintiff's motion for default judgment); *Gucci America, Inc. v. (fujian)keji,* Case No. 18-cv-60727-WPD (S.D. Fla. August 15, 2018) (awarding $1 million in statutory damages against each defendant on plaintiff's motion for default judgment); *Kenzo S.A. v. albertee,* Case No. 17-cv-62533-DPG (S.D. Fla. March 13, 2018) (awarding

13

$1 million in statutory damages against each defendant on plaintiff's motion for default judgment).

The allegations in the Complaint, which are taken as true, establish that Defaulting Defendants intentionally infringed Plaintiff's SHANGGUAN trademark for the purpose of offering for sale, marketing, and selling their products that are not authorized, endorsed or approved by Plaintiff. Plaintiff suggests the Court award $15,000 per type of product for willful infringement. This award is within the statutory range for a willful violation, and is sufficient to compensate Plaintiff, punish Defaulting Defendants, and deter Defaulting Defendants and others from continuing to infringe Plaintiff's trademark.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff is entitled to the entry of final default judgment. This Court **GRANTS** Plaintiff's Motion for Default Judgment and Permanent Injunctive Relief.

2. Final Default Judgment will be entered by separate order.

SO ORDERED this _____ day of _____, 2026.

_____
**WILLIAM M. RAY, II**
**UNITED STATES DISTRICT JUDGE**

Copies to counsel via CM/ECF

# List of Defendants (53 Defendants)

| Def. #. | Seller Aliases | Defendants' Walmart Store URLs |
|---|---|---|
| 1 | ankasha | https://www.walmart.com/global/seller/101591010 |
| 2 | akapiao | https://www.walmart.com/global/seller/102512090 |
| 3 | feiliansheng | https://www.walmart.com/global/seller/102488721 |
| 4 | Homelifegood | https://www.walmart.com/global/seller/101177866 |
| 5 | huajuming | https://www.walmart.com/global/seller/102507939 |
| 6 | jianteyi | https://www.walmart.com/global/seller/101677879 |
| 7 | Lierteer Homelife | https://www.walmart.com/global/seller/101137320 |
| 8 | luolangdi | https://www.walmart.com/global/seller/101551870 |
| 9 | Smarthome | https://www.walmart.com/global/seller/101111998 |
| 10 | meiduo | https://www.walmart.com/global/seller/102641461 |
| 11 | Spshop | https://www.walmart.com/global/seller/101623517 |
| 12 | Yafix | https://www.walmart.com/global/seller/101252564 |
| 13 | Lanfini | https://www.walmart.com/global/seller/101197872 |
| 14 | dabailunkeji | https://www.walmart.com/global/seller/101554926 |
| 15 | Smile Home | https://www.walmart.com/global/seller/101275513 |
| 16 | Beauty home | https://www.walmart.com/global/seller/101112644 |
| 17 | yuedadang | https://www.walmart.com/global/seller/102619346 |
| 18 | Zelenfel | https://www.walmart.com/global/seller/101647623 |
| 19 | KABUDA | https://www.walmart.com/global/seller/101127803 |
| 20 | yashili | https://www.walmart.com/global/seller/102486764 |
| 21 | taituoti | https://www.walmart.com/global/seller/101590202 |
| 22 | fangkenuo | https://www.walmart.com/global/seller/102507863 |
| 23 | AFQH | https://www.walmart.com/global/seller/101591015 |
| 24 | Homecarall | https://www.walmart.com/global/seller/101127817 |
| 25 | Goodhd | https://www.walmart.com/global/seller/101138045 |
| 26 | Lylong | https://www.walmart.com/global/seller/101677690 |
| 27 | Ofenier | https://www.walmart.com/global/seller/101105703 |
| 28 | BUYSIS TRADE | https://www.walmart.com/global/seller/101188285 |
| 29 | RichLink | https://www.walmart.com/global/seller/102516068 |
| 30 | hongsidarui | https://www.walmart.com/global/seller/102507532 |
| 31 | Hanifel | https://www.walmart.com/global/seller/101199439 |
| 32 | laisenwei | https://www.walmart.com/global/seller/102487758 |
| 33 | feidakeer | https://www.walmart.com/global/seller/102498292 |
| 34 | SWANG | https://www.walmart.com/global/seller/102561191 |

| 35 | Haimni | https://www.walmart.com/global/seller/101565846 |
|---|---|---|
| 36 | Wuweikeji | https://www.walmart.com/global/seller/101591064 |
| 37 | Zeraneb | https://www.walmart.com/global/seller/101582657 |
| 38 | Sufanic | https://www.walmart.com/global/seller/101138308 |
| 39 | Bosisa | https://www.walmart.com/global/seller/101556227 |
| 40 | JoyPulse | https://www.walmart.com/global/seller/101350060 |
| 41 | Benafini | https://www.walmart.com/global/seller/101105705 |
| 42 | diluopei | https://www.walmart.com/global/seller/102494757 |
| 43 | Mingyiq Inc | https://www.walmart.com/global/seller/101137305 |
| 44 | nuoyada | https://www.walmart.com/global/seller/102506227 |
| 45 | YFind | https://www.walmart.com/global/seller/102515853 |
| 46 | chengsi | https://www.walmart.com/global/seller/101591838 |
| 47 | Just 4U | https://www.walmart.com/global/seller/101103056 |
| 48 | nuoxiang | https://www.walmart.com/global/seller/102568260 |
| 49 | SOFEIYA HOME | https://www.walmart.com/global/seller/101556636 |
| 50 | Sucyfini | https://www.walmart.com/global/seller/101084863 |
| 51 | Hmoddpon | https://www.walmart.com/global/seller/101485859 |
| 52 | zhimaoxi | https://www.walmart.com/global/seller/102486768 |
| 53 | jukekeji | https://www.walmart.com/global/seller/102516944 |